1   Jeffrey Tsai (SBN 226081)
      *jeff.tsai@us.dlapiper.com*
2   DLA PIPER LLP (US)
3   555 Mission Street, Suite 2400
    San Francisco, CA 94105-2933
4   Tel: (415) 615-6055

5   Darryl Louis Tarver (*Admitted pro hac vice*)
      *darryl.tarver@us.dlapiper.com*
6   DLA PIPER LLP (US)
7   650 S. Exeter Street, Suite 1100
    Baltimore, MD 21202
8   Tel: (410) 580-4123

9   *Attorneys for Defendant Sheng Thao*

10                    **UNITED STATES DISTRICT COURT**

11                 **NORTHERN DISTRICT OF CALIFORNIA**

12                        **OAKLAND DIVISION**

13

14  UNITED STATES OF AMERICA,              Case No. 4:25-CR-3-YGR

15                      Plaintiff,          **DEFENDANT SHENG THAO'S REPLY IN
                                            SUPPORT OF MOTION TO SUPPRESS**
16            v.                            **AND <u>FRANKS</u> MOTION**

17  SHENG THAO, ANDRE JONES, DAVID
    TRUNG DUONG, and ANDY HUNG
18  DUONG,
                        Defendants.
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page(s)

I.     INTRODUCTION.................................................................................................1

II.    ARGUMENT ......................................................................................................2

    A.    Defendants Have Satisfied Their Burden for a Franks Hearing...........................2

        1.    The February and May 2024 affidavits do not cure probable cause deficiencies in the June 2024 affidavit .......................................................3

        2.    The government has essentially conceded Agent Haunold intentionally and recklessly withheld information bearing on Chief Cooperator's credibility .....................................................................................................5

            (a)    The government admits it intentionally omitted Chief Cooperator's racial animus to "focus" the magistrate judge...........6

            (b)    The government admits its agent failed to diligently investigate Chief Cooperator's credibility problems.......................................7

        3.    The credibility omissions are material because they go to the heart of the June 2024 warrant .......................................................................................8

    B.    The Court Should Suppress the June 2024 Residential Search Warrants ...........10

    C.    The February and May 2024 Warrants Are Temporally Overbroad...................13

III.   CONCLUSION ................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Franks v. Delaware,
    438 U.S. 154 (1978) ................................................................................................... *passim*

Giglio v. United States,
    405 U.S. 150 (1972) ................................................................................................... 7

In re Search of Google Email Accts
    92 F. Supp. 3d 944 (D. Alaska 2015) ....................................................................... 13

Okada v. Whitehead,
    759 F. App'x 603 (9th Cir. 2019) ............................................................................. 6

Rugendorf v. United States,
    376 U.S. 528 (1964) ................................................................................................... 7

United States v. Abboud,
    438 F.3d 554 (6th Cir. 2006) .................................................................................... 12

United States v. Craighead,
    539 F.3d 1073 (9th Cir. 2008) .................................................................................. 3

United States v. DeLeon,
    979 F.2d 761 (9th Cir. 1992) .................................................................................... 7

United States v. Fernandez,
    388 F.3d 1199 (9th Cir. 2004) .................................................................................. 12

United States v. Garcia,
    809 F. Supp. 2d 1165 (N.D. Cal. 2011) ................................................................... 12

United States v. Glover,
    755 F.3d 811 (7th Cir. 2014) .................................................................................... 6, 7

United States v. Hall,
    113 F.3d 157 (9th Cir. 1997) .................................................................................... 9

United States v. Kvashuk,
    29 F.4th 1077 (9th Cir. 2022) ................................................................................... 12

United States v. Leon,
    468 U.S. 897 (1984) ................................................................................................... 2, 10, 13

United States v. Martinez-Garcia,
    397 F.3d 1205 (9th Cir. 2005) ........................................................................................... 8

United States v. Meling,
    47 F.3d 1546 (9th Cir. 1995) ........................................................................................... 10

United States v. Miller,
    753 F.2d 1475 (9th Cir. 1985) ........................................................................................ 7, 8

United States v. Patayan Soriano,
    361 F.3d 494 (9th Cir. 2004) ......................................................................................... 9, 10

United States v. Reeves,
    210 F.3d 1041 (9th Cir. 2000) ........................................................................................... 9

United States v. Sayakhom,
    186 F.3d 928 (9th Cir. 1999) ........................................................................................... 12

United States v. Weber,
    923 F.2d 1338 (9th Cir. 1990) ........................................................................................ 11

Whalen v. McMullen,
    907 F.3d 1139 (9th Cir. 2018) ........................................................................................... 3

DEFENDANT SHENG THAO'S REPLY IN SUPPORT OF
MOTION TO SUPPRESS AND FRANKS MOTION
CASE NO. 4:25-CR-3-YGR

1

## I.  <u>INTRODUCTION</u>

2      The government's opposition does not dispute that its affidavit evidence—whether

3  testimonial from Chief Cooperator's proffer or documentary in nature—relies on the spoken and

4  written explanations of Chief Cooperator. Indeed, there is not a single verbal recording, email,

5  text message, or document in which Ms. Thao agrees to join the alleged bribery scheme

6  fabricated by Chief Cooperator. As a result, there can be no reasonable debate that the

7  credibility information about Chief Cooperator withheld from the magistrate judge in the June

8  2024 affidavit is material to probable cause.

9      The government bootstraps the February and May 2024 search warrant affidavits to

10  attempt to establish probable cause independent of any information provided by Chief

11  Cooperator starting in June 2024. But the underlying probable-cause information in <u>all</u> of Agent

12  Haunold's affidavits suffer from the same legal infirmity: at bottom, a credibility assessment of

13  Chief Cooperator by the magistrate judge necessarily occurred in light of the inclusion of Chief

14  Cooperator's information in <u>all</u> of the affidavits (what the government calls "documentary" as to

15  the February and May 2024 affidavits, and "documentary" and statements as to the June 2024

16  affidavit).

17      To be sure, the government's opposition functionally concedes that it intentionally

18  withheld damaging credibility information about Chief Cooperator—specifically, statements of

19  racial animus by Chief Cooperator about Defendant Andre Jones ("Stupid black shit . . . Don't

20  think how things get done" [ECF No. 136 at 10]). The government's explanation that its

21  surgical omission was simply an attempt to "focus" the magistrate judge on the evidence the

22  government favored the most (<u>see</u> ECF No. 151 at 23) is, at best, not credible. The

23  government's opposition also conceded that Agent Haunold failed to diligently investigate

24  damaging credibility information about Chief Cooperator but simply chalks it up to information

25  the agent "was not aware of." Even were that an acceptable justification, the government's

26  conduct reflects, at a minimum, a reckless disregard for the truth. As a result, a <u>Franks</u> hearing

27  is justified under these circumstances.

28

1    In addition, the government's opposition fails to show how boilerplate language is

2    sufficient to establish a nexus between Ms. Thao's participation in an alleged bribery scheme

3    and Ms. Thao's residence, vehicle, and person. Instead, the government doubles down on the

4    notion that the mere utterance of generic language shrouds the government from any further

5    obligation to establish a proper nexus to invade the house and property of a citizen, much less

6    the then-mayor of a major metropolitan city. The absence of facts—any facts—tying the

7    allegations to Ms. Thao's home also negate the applicability of the <u>Leon</u> good-faith exception.

8    Additionally, as it relates to Ms. Thao's joinder to the temporal-overbreadth arguments

9    in Defendant Andy Duong's motion to suppress the February and May 2024 warrants, the

10    allegations related to Ms. Thao do not even begin until October 2022. Thus, there was no

11    probable cause to search her iCloud and personal email accounts three to four years earlier.

## II.   <u>ARGUMENT</u>

### A.   Defendants Have Satisfied Their Burden for a <u>Franks</u> Hearing

14    Defendants have made the required initial showing under <u>Franks v. Delaware</u>, 438 U.S.

15    154 (1978), to warrant a hearing. Notwithstanding his minimal disclosure in a single footnote of

16    fragments of Chief Cooperator's history of dishonesty, Agent Haunold intentionally and

17    recklessly withheld information about this history—including, importantly, dishonesty with law

18    enforcement and false allegations against public officials. <u>See, e.g.</u>, ECF No. 136 at 8. The

19    misleading omissions are material because the determination of probable cause to support the

20    June 2024 warrant—and indeed, the government's entire case against Defendants—hinges on

21    whether the magistrate judge could reasonably rely on Chief Cooperator's statements and

22    documentary information.

23    The government makes three arguments in opposing Defendants' <u>Franks</u> motions: (1)

24    that there was independent "documentary" evidence supporting probable cause without the

25    statements of Chief Cooperator, so the materiality prong of <u>Franks</u> is unmet; (2) the affidavit

26    already partially disclosed impeachment material about Chief Cooperator in a footnote; and (3)

27    the agent did not know the facts undermining the credibility of Chief Cooperator—the

28

government's star witness and the central figure in its years-long investigation—so the omissions were not material. All three of these arguments fail and only underscore that Defendants should be granted a <u>Franks</u> hearing.

      **1.      The February and May 2024 affidavits do not cure probable cause deficiencies in the June 2024 affidavit.**

Agent Haunold's claim that "[Chief Cooperator]'s statements were included for merely 'context and completeness'" (ECF No. 151 at 1) is not some kind of cure for probable cause deficiencies and, in any event, is wrong. To be sure, if the government actually believed it could obtain a warrant to search Ms. Thao's residence without Chief Cooperator's June 2024 proffer, it would have done so. Instead, it included Chief Cooperator's proffer information in order to provide probable-cause support given the significantly different kind of warrant it was seeking in June 2024 (personal residence, vehicle, and person) versus February and May 2024 (data and accounts).[1] <u>See, e.g.</u>, <u>United States v. Craighead</u>, 539 F.3d 1073, 1083 (9th Cir. 2008) (acknowledging that a person's own home is "the most constitutionally protected place on earth"); <u>Whalen v. McMullen</u>, 907 F.3d 1139, 1146 (9th Cir. 2018) ("[A]t the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). And, to be sure, the government's reliance on Chief Cooperator was significant to interpret and explain communications which do not—without Chief Cooperator's fabricated allegations—incriminate Ms. Thao at all. <u>See, e.g.</u>, Fine Decl., Ex. 6 (June 2024 Haunold Aff.) ¶¶ 35-36, 39, 43, 44-45, 46, 49-52, 54. As such, Agent Haunold had an obligation to faithfully provide the Court with a full disclosure of Chief Cooperator's

---

[1] In the June 2024 affidavit, Agent Haunold also references a June 9, 2024, shooting for which he takes Chief Cooperator at his word that it was "coordinated by the [Duong] family in an attempt to kill or harm [Chief Cooperator] to prevent him from cooperating with the investigation." ECF No. 151, Fine Decl. Ex. 6 (June 2024 Haunold Aff.) ¶ 31. Importantly, the government makes no attempt to tie this allegation to Ms. Thao—nor could it. Nonetheless, it bootstraps the same affidavit allegation to create urgency for obtaining a warrant to search <u>Ms. Thao's residence</u>. Although this incident in no way involves her, Ms. Thao nevertheless joins in the arguments raised by Defendants Duong insofar as they detail Chief Cooperator's lack of credibility and the appropriateness of a <u>Franks</u> hearing. <u>See</u> ECF No. 119 at 14-17; ECF No. 138 at 12.

1    significant history of fraud directly bearing upon his fundamental believability.

2          Even if, however, the Court finds that Chief Cooperator's information is somehow

3    divorced from the so-called independent "documentary" evidence, the same credibility

4    assessment of Chief Cooperator would <u>still</u> be required.[2] And that's because the "documentary"

5    chain of evidence establishing Ms. Thao's involvement in a criminal conspiracy with Chief

6    Cooperator necessarily relies on Chief Cooperator's <u>own</u> pre-cooperation text messages and

7    notes to render any possible insinuation of criminal conduct by Ms. Thao. <u>See</u> ECF No. 151 at

8    7:1-17 (identifying six primary documents supposedly establishing probable cause for Ms.

9    Thao's involvement in a conspiracy).

10         For example, there is not a single document in which Ms. Thao communicates with Chief

11   Cooperator (or Defendant David Duong or Defendant Andy Duong or Defendant Andre Jones,

12   for that matter) about negotiating or discussing, much less agreeing to, a bribe. The

13   government's primary six documents also notably include "a draft letter of interest regarding

14   Oakland's purchase of Evolutionary Homes units prepared for [Ms. Thao's] signature," (ECF

15   No. 151 at 7), despite it being <u>written by Chief Cooperator</u>, not Ms. Thao. And, importantly,

16   there is no allegation—much less evidence—that the letter was ever provided to Ms. Thao for

17   review or signature or ever otherwise in her possession. Chief Cooperator's fever-dream letter

18   only has any link to Ms. Thao because Chief Cooperator says so. <u>See</u> Fine Decl., Ex. 6 (June

19   2024 Haunold Affidavit) ¶ 80 (alleging "[Ms. Thao] never signed the letter" despite Chief

20

21         [2] To bolster the idea of independent documentary evidence in the June 2024 affidavit,
     the government contends that the February and May 2024 affidavits are clean because
22   "Defendants have not [probable-cause] challenged these warrants[.]" ECF No. 151 at 7, 8 & 9.
     This is false as a matter of procedure and logic. As a procedural matter, Ms. Thao's joinder (and
23   motion) relates to Defendant David Duong's probable-cause challenge to the June 2024 warrant
     (ECF No. 119) and Defendant Andy Duong's temporal-overbreadth challenge to the February
24   and May 2024 warrants (ECF No. 138). As a matter of logic, Ms. Thao has, in fact, attacked the
     government's documentary evidence supporting probable cause because the government lacks a
25   single item of evidence in which <u>Ms. Thao</u> agrees to join the alleged bribery scheme involving
     Chief Cooperator. <u>See</u> ECF No. 136 at 13-16. Moreover, because the government failed to meet
26   its probable cause burden with respect to the June 2024 warrant (despite relying on Chief
     Cooperator's proffer statements), it plainly follows that the government failed to establish
27   probable cause within earlier warrants, which contained the similar facts <u>without</u> Chief
     Cooperator's proffered statements.

28

Cooperator's efforts).

Indeed, of these six primary documents, only <u>one</u> even involves Ms. Thao herself: a text message chain in which Chief Cooperator simply asks Ms. Thao for an October 7, 2022, meeting, and Ms. Thao agrees on a date. <u>See</u> ECF No. 151 at 7:1-2 (citing Fine Decl., Ex. 1 [Feb. 2024 Haunold Aff.] ¶ 34). Even Agent Haunold recognized that a mere meeting request from a constituent/supporter to an elected official lacks any independent indicia of criminality, which is why his February 2024 affidavit then provides <u>no less than six additional explanatory paragraphs</u> interpreting <u>other</u> of Chief Cooperator's texts and notes (<u>id.</u> ¶¶ 35-40)—and <u>none of which</u> the government bothers to allege Ms. Thao wrote, read, possessed, endorsed, approved, or otherwise saw. <u>See</u> Fine Decl., Ex. 6 (June 2024 Haunold Aff.) ¶ 50 (asserting that Chief Cooperator confirmed his notes-to-self spelled out the supposed bribery scheme, and that he discussed the topics with Ms. Thao). Indeed, this text message chain perfectly puts the lie to the suggestion that Chief Cooperator's information in the June 2024 affidavit was harmless surplusage for context. There can be no serious question that Chief Cooperator's credibility is material and critical to the government's ability to meet its probable-cause burden.[3]

### 2. The government has essentially conceded Agent Haunold intentionally and recklessly withheld information bearing on Chief Cooperator's credibility.

Agent Haunold's selective disclosures in the June 2024 affidavit footnote did not materially express the scope and nature of Chief Cooperator's credibility problems or motivations that bear on his fundamental inability to tell the truth. The government's claim that its footnote constituted "fulsome disclosures" (ECF No. 151 at 18) is, at best, counter-factual. <u>Compare</u> Fine Decl., Ex. 6 (June 2024 Haunold Aff.) ¶ 30 n.2 <u>with</u> ECF No. 119 (D. Duong Mtn.) at 12-16 <u>and</u> ECF No. 136 (Thao Mtn.) at 7.

---

[3] The government's opposition hides a subtle, but important, admission about its preternatural reliance on Chief Cooperator. It contends that the June 2024 affidavit contained probable cause "separate and apart from [Chief Cooperator's] <u>statements to law enforcement</u>[,]" (ECF No. 151 at 2:19-21) (emphasis added), which is a key implicit admission that its supposed probable cause necessarily relies on the credibility and veracity of Chief Cooperator's documents (notes and text messages).

1
2

> (a)    ***The government admits it intentionally omitted Chief Cooperator's***
> ***racial animus to "focus" the magistrate judge.***

3    In its opposition, the government concedes that it decided to withhold Chief

4    Cooperator's documented expression of racial bias against Defendant Andre Jones in order to

5    "focus" the magistrate judge's attention. <u>See</u> ECF No. 151 at 23 (citing Haunold Mtn. Decl. ¶¶

6    29-30) ("The two lines were removed from the initial affidavits targeting [Chief Cooperator] so

7    that the reviewing magistrate judge would focus on the actual hard evidence against [Chief

8    Cooperator], rather than the potentially racially-charged language in the text messages."). For

9    his part, Agent Haunold also attempts to downplay whether Chief Cooperator's derogatory

10   language is even derogatory at all. <u>See</u> Haunold Mtn. Decl. ¶ 30 (stating the language "<u>may

11   have been interpreted</u> as using racially-charged language"). Agent Haunold even contends now

12   that the statements of racial bias "did not add to the substance of the message conversation." <u>Id.</u>

13   To be sure, Chief Cooperator's "stupid black shit" language in reference to Mr. Jones is

14   racially derogatory (ECF No. 136 at 9-10), and evidence of race-based bias is plainly material to

15   Chief Cooperator's fundamental credibility. <u>See, e.g.</u>, <u>Okada v. Whitehead</u>, 759 F. App'x 603,

16   605 (9th Cir. 2019) (holding that racially disparaging remarks were properly admitted because

17   they were "highly relevant to [the witness's] credibility as a witness"); <u>see also</u> <u>United States v.

18   Glover</u>, 755 F.3d 811, 816 (7th Cir. 2014) (reversing and remanding for a <u>Franks</u> hearing based

19   on insufficient information about the informant's credibility, acknowledging that "information

20   about the informant's credibility or potential bias is crucial"). The government's

21   acknowledgement that its intentional omission was repeated multiple times (in the February

22   2024 affidavit, again in the May 2024 affidavit, and then again in the June 2024 affidavit) (ECF

23   No. 151 at 23:4-6) only magnifies the intentionality of this misconduct. In truth, the government

24   omitted the racial-bias language because it would taint Chief Cooperator's credibility, which the

25   government knows—and knew at the time—is instrumental to its probable cause. This

26   deliberate withholding of information plainly satisfies the first prong of the <u>Franks</u> inquiry.

27   / / /

28

1

(b)    **The government admits its agent failed to diligently investigate Chief Cooperator's credibility problems.**

2

3       The government's opposition functionally admits that Agent Haunold failed to diligently

4   investigate Chief Cooperator's credibility problems but excuses it as something the agent "was

5   not aware of[.]" ECF No. 151 at 3:25. As an initial matter, the government's reliance on Agent

6   Haunold's demonstrable ignorance is hardly an excuse for a constitutional failure. See, e.g.,

7   Franks, 438 U.S. at 164 n.6 (the government cannot insulate a misstatement "by relaying it

8   through an officer-affiant personally ignorant of its falsity") (citing Rugendorf v. United States,

9   376 U.S. 528, 533 n.4 (1964)); accord United States v. DeLeon, 979 F.2d 761, 764 (9th Cir.

10  1992). In fact, it only further warrants a Franks hearing. See, e.g., Glover, 755 F.3d at 816

11  (reversing and remanding for Franks hearing because "information about the informant's

12  credibility or potential bias is crucial").

13      But, even if Agent Haunold's ignorance is taken at full par value, that admission alone

14  demonstrates a reckless disregard for the truth about Chief Cooperator's credibility. The

15  government has been investigating Chief Cooperator (and, presumably, Defendants) since early

16  2023. See ECF No 151 at 1. The government acknowledges that its investigation and case

17  against Defendants center around Chief Cooperator, the primary hub of the alleged bribery

18  scheme. See id. at 5-6. The government knew or, at a minimum, should have known the full

19  nature and extent of Chief Cooperator's credibility problems. See, e.g., Giglio v. United States,

20  405 U.S. 150, 154 (1972) ("When the 'reliability of a given witness may well be determinative

21  of guilt or innocence,' nondisclosure of evidence affecting credibility" justifies a new trial,

22  "irrespective of the good faith or bad faith of the prosecution").

23      The cases cited by the government to excuse Agent Haunold's failures to diligently

24  investigate Chief Cooperator's credibility are readily distinguishable. In United States v. Miller,

25  753 F.2d 1475 (9th Cir. 1985), a 1980s drug trafficking case, the court determined that the

26  officers "made diligent efforts to find out about the [informant's] background" and, thus, their

27  omission of a portion of the informant's criminal history "amount[ed] to no more than

28  negligence." Id. at 1478. At the time Miller was decided—before the Internet was available—it

7

is plausible to believe that diligent efforts to uncover public records might still miss public

filings bearing on an informant's credibility. In 2024, at the time the affidavit was sworn, the

government had ready access to public filings through multiple online databases. <u>See, e.g.</u>, Fine

Decl., Ex. 6 (June 2024 Haunold Aff.) ¶ 124 ("Based on review of law enforcement databases . .

."). Moreover, Agent Haunold expounded at length about his deep well of experience—

representing to the magistrate judge that he has training on "federal criminal procedure" and

"investigative techniques," as well as "on-the-job training" and "extensive work" and

"investigative experience" in white-collar cases. <u>See</u> Fine Decl., Ex. 6 (June 2024 Haunold Aff.)

¶ 5. Based on the totality of the circumstances here, the government's suggestion that Agent

Haunold's conduct could only be "negligent rather than reckless or intentional" (ECF No. 151 at

17) (citing <u>Miller</u>, 753 F.2d at 1478) lacks merit in light of Agent Haunold's intentional

omission of other material information—namely, Chief Cooperator's documented racial bias.

In <u>United States v. Martinez-Garcia</u>, 397 F.3d 1205 (9th Cir. 2005), a drug trafficking

case, there were strong indications that the informant's information was credible, such as

controlled buys under surveillance and corroboration from other informants. <u>Id.</u> at 1217. The

court determined the other corroborating facts outweighed the omission of pending drug charges

against the informant. <u>Id.</u> Here, there are no other such corroborations: there is no surveilled

transaction involving Ms. Thao, and there are no other individuals to establish Ms. Thao's

agreement to participate in the scheme besides Chief Cooperator. The government is relying on

Chief Cooperator's word—and Chief Cooperator's word alone—and, against this backdrop,

Agent Haunold's intentional and reckless omissions of key credibility information concerning

Chief Cooperator looms large.

**3.    The credibility omissions are material because they go to the heart of the June 2024 warrant.**

As the government concedes, when past criminal conduct going to the heart of the

informant's credibility is withheld from a magistrate judge, a <u>Franks</u> hearing is warranted. <u>See</u>

ECF No. 151 at 29; <u>United States v. Hall</u>, 113 F.3d 157, 158 (9th Cir. 1997). This is particularly

8

1    true in the instant case.

2        First, the materiality of information bearing on Chief Cooperator's credibility is hardly

3    debatable. For the government to prevail in this case, it needs a jury to believe that Chief

4    Cooperator—a serial fraudster—is now telling the truth. Similarly, to convince the magistrate

5    judge that there was probable cause to believe that Ms. Thao was part of a bribery scheme

6    involving Chief Cooperator and the other Defendants, Agent Haunold needed the magistrate

7    judge to credit Chief Cooperator. As a result, Chief Cooperator's track record of dishonesty

8    bears directly on Chief Cooperator's credibility—a civil and criminal track record of misleading

9    others about his influence and authority in conducting his business.[4] In fact, the evidence in this

10   case shows that Chief Cooperator gave false information to law enforcement on other

11   occasions—all of which is omitted from Agent Haunold's affidavit.[5] Cf. United States v.

12   Reeves, 210 F.3d 1041, 1045 (9th Cir. 2000) (ruling that the informant's undisclosed credibility

13   problems were offset by a track record of providing reliable evidence to law enforcement

14   leading to three other arrests for similar criminal activity). By withholding this material

15   credibility information from the magistrate judge (which the government refers to as

16   "focus[ing]" the judge [ECF No. 151 at 23]), the government deprived her of the opportunity to

17   meaningfully assess Chief Cooperator's reliability.

18       Second, the omissions also undermined the magistrate judge's ability to assess the

19   government's supposedly "independent" documentary evidence. Citing United States v. Patayan

20   Soriano, 361 F.3d 494 (9th Cir. 2004), the government attempts to bolster the reliability of

21   Chief Cooperator's information by arguing the information is "against his penal interests." ECF

22   No. 151 at 28. But Patayan Soriano is distinguishable on multiple grounds. As an initial matter,

23

24       [4] See, e.g., ECF No. 136 at 8 (Chief Cooperator held himself out as a real estate broker
25   despite surrendering his real estate license years prior); ECF No. 119 at 12 (Chief Cooperator
     raised $210,000 on the false pretense that he was spearheading a biodiesel fuel project).

26       [5] See, e.g., ECF No. 119 at 14-16 (Chief Cooperator provided law enforcement a false
27   account regarding a shooting outside his home in his effort to implicate the Duongs); ECF No.
     136 at 8-9 (Chief Cooperator fabricated allegations of corruption and vindictive prosecution
28   against the former district attorney with no evidence to support them).

1    <u>Patayan Soriano</u> pertained to post-arrest admissions by the informant, whereas the documentary

2    evidence's events the government relies upon here took place before any arrest. Additionally,

3    Chief Cooperator had a clear motive to convince others <u>at the time</u> (including, but not limited

4    to, Defendant Andy Duong) that he had a leading mayoral candidate to do his bidding,

5    regardless of whether that boast was true (it was not).[6]

6    **B.    The Court Should Suppress the June 2024 Residential Search Warrants**

7            The government's opposition does not directly address Ms. Thao's motion arguments

8    that the June 2024 affidavit lacked probable cause that Ms. Thao was a member of an alleged

9    bribery scheme created by Chief Cooperator.[7] Thus, Ms. Thao incorporates by reference her

10   motion arguments outlining the probable-cause failures in the June 2024 affidavit. <u>See</u> ECF No.

11   136 at 13-16.

12           The opposition instead argues that there is a sufficient nexus (between residence and

13   alleged crimes) for a residential search warrant and, in any event, the <u>Leon</u> good-faith exception

14   applies. <u>See</u> ECF No. 151 at 31-35. Neither is true.

15           <u>First</u>, in an attempt to establish nexus with Ms. Thao's residence, the government relies

16   on nothing more than generalized, conclusory assertions that records of the alleged scheme are

17   likely to be found in Ms. Thao's residence and vehicle. <u>See id.</u> at 32 (arguing that mere

18   "assertions contained in the affidavit, based on an affiant's training and experience, are

19

20           [6] The government's additional authority is unavailing. In <u>United States v. Meling</u>, 47
     F.3d 1546, 1555 (9th Cir. 1995), the Ninth Circuit determined that a <u>Franks</u> hearing was

21   unwarranted despite the government's omission about an informant's criminal history because
     "considerable independent evidence" beyond the informant's statements pointed to the

22   defendant's guilt. Here, by contrast, Agent Haunold cited Chief Cooperator's statements nearly
     50 times in the June 2024 affidavit, and there is no direct evidence of Ms. Thao's agreement to

23   participate in the conspiracy.

24           [7] The opposition only addresses the government's evidence in the context of what it
     refers to as "significant documentary evidence independent of [Chief Cooperator's] statements

25   to law enforcement." ECF No. 151 at 10-13. Even then, the government's opposition in those
     pages makes exactly <u>two references</u> to conduct by Ms. Thao herself—a text message exchange

26   in which a constituent and campaign supporter (Chief Cooperator) seeks a meeting with Ms.
     Thao (<u>id.</u> at 10) and a text message in which Ms. Thao asks Defendant Andre Jones to

27   "connect" with Chief Cooperator (<u>id.</u> at 11). The government does not cite any evidence in its
     opposition that Ms. Thao expressed agreement to join the alleged bribery scheme. The <u>only</u>

28   supposed evidence of her agreement comes singularly from Chief Cooperator's statements.

1    sufficient to establish nexus in a white-collar and document-heavy case such as this"). In fact,

2    these are precisely the kinds of boilerplate assertions that the Ninth Circuit has repeatedly found

3    insufficient to establish probable cause with adequate particularity. See, e.g., United States v.

4    Weber, 923 F.2d 1338, 1345 (9th Cir. 1990) (rejecting warrant's reliance on "rambling

5    boilerplate recitations designed to meet all law enforcement needs" that were not "drafted with

6    the facts of this case or this particular defendant in mind").

7        Here, Agent Haunold's affidavit is a textbook example of inadequate generic template

8    for a residential search warrant. And there can be little doubt that his boilerplate was drafted

9    without Ms. Thao—the elected chief executive of the City of Oakland—in mind, much less with

10   his own FBI and Justice Department policies in mind related to residential search warrants as to

11   such officials. Instead, Agent Haunold justified a search of the personal residence of the then-

12   sitting mayor by referencing plainly inapplicable things such as "photographs of items relevant

13   to their schemes or trophy-shots of ill-gotten gains" (Fine Decl., Ex. 6 [June 2024 Haunold Aff.]

14   ¶ 158) and schemes and manipulation of the "permitting process" (id. ¶ 162). There is not,

15   however, even a single allegation—whether from Chief Cooperator or the so-called "significant

16   documentary evidence independent of [Chief Cooperator's] statements to law enforcement"

17   (ECF No. 151 at 10-13)—from which any semblance of a "nexus" (between Ms. Thao's

18   residence and any evidence of the alleged bribery conspiracy as to Ms. Thao) could be derived.[8]

19       The opposition's suggestion that the Ninth Circuit has endorsed a rubber-stamp

20   approach to residential search warrants so long as the affiant utters the "affiant's training and

21   experience" shibboleth is meritless. See, e.g., United States v. Garcia, 809 F. Supp. 2d 1165,

22

23       [8] The government's choice to seek a warrant to search the residence—not the office—of
     the then-mayor of Oakland in a putative corruption investigation into alleged official acts
24   further undermines the government's claim that its search justifiably targeted the locations
     "where evidence of these crimes would be found." ECF No. 151 at 7. The decision to search
25   Ms. Thao's home—just two days after the Alameda County Board of Elections qualified a recall
     election of Ms. Thao—appeared aimed more at disgracing a sitting public official and
26   influencing an election than obtaining relevant evidence of an alleged crime. And, to be sure,
     the government's public raid of the then-mayor's personal residence in the morning on June 20,
27   2024, accomplished that goal through its "FBI"-jacketed agents knowingly parading in and out
     of Ms. Thao's residence for a herd of television news cameras to film.
28

1170 (N.D. Cal. 2011) ("The Ninth Circuit has held that 'probable cause that a resident of the location has committed a crime is in itself insufficient to satisfy' the requirement that evidence probably will be found at the locations to be searched.") (quoting United States v. Fernandez, 388 F.3d 1199, 1254 (9th Cir. 2004)). In arguing that its boilerplate recitations create the required nexus, the government primarily relies on three cases, which do not help the government here because they rely on a fact-specific nexus between the alleged offense and the defendant's residence.

In United States v. Sayakhom, 186 F.3d 928 (9th Cir. 1999), the court upheld a warrant to search the defendant's business because the government had established probable cause to believe the defendant's "entire business is merely a scheme to defraud or that all of the business's records are likely to evidence criminal activity." Id. at 934. Similarly, in United States v. Abboud, 438 F.3d 554 (6th Cir. 2006), the government alleged that defendants were involved in a continuous check-kiting scheme involving several of their business and personal bank accounts. Id. at 563. Neither Sayakhom nor Abboud apply here. In this case, the government does not (and will not) allege that Ms. Thao—as the then-Oakland mayor—was running a continuous fraudulent or otherwise criminal enterprise. The absence of this kind of foundational hook renders those decisions inapposite.

As for United States v. Kvashuk, 29 F.4th 1077 (9th Cir. 2022), the decision actually supports the conclusion that the government's copy-pasted recitations are insufficient to create the requisite nexus with Ms. Thao's home. Specifically, the Kvashuk court relied heavily on the fact that "the affidavit contained evidence that the house had internet service and that the IP address associated with the house was used to access" the accounts involved in the alleged fraud and money laundering scheme. Id. at 1086-87. Here, the government failed to take even the minimal step of establishing nexus by tracing any incriminatory use of Ms. Thao's electronic devices to the home using an IP address. Nor could it because there is no evidence that Ms. Thao ever used her home—or any device in her home—to substantiate the search-warrant need to invade her personal residence, vehicle, and her person.

1       <u>Second</u>, the government's standard fallback argument—that it acted in good faith—fails

2   for the same reason the June 2024 search warrant is unconstitutional in the first place. <u>United</u>

3   <u>States v. Leon</u>, 468 U.S. 897 (1984), does not excuse reliance on a warrant that is "so facially

4   deficient" in its particularity that no reasonable officer would believe it to be valid. Other than

5   boilerplate allegations without any application to the alleged facts of this case, the June 2024

6   affidavit did not make a single particularized allegation as to Ms. Thao's residence from which

7   probable cause as to nexus could reasonably be formed. As such, reliance on the affidavit for

8   nexus was objectively unreasonable—and the <u>Leon</u> good-faith exception cannot apply.

9       **C.**       **The February and May 2024 Warrants Are Temporally Overbroad**

10      Ms. Thao joins Defendant Andy Duong's motion to suppress the February and May

11  2024 search warrants because, as it relates specifically to Ms. Thao, these warrants are plainly

12  overbroad by including time frames that bear no relevance to the government's alleged scheme.

13  <u>See, e.g.</u>, <u>In re Search of Google Email Accts. identified in Attachment A</u>, 92 F. Supp. 3d 944,

14  950 (D. Alaska 2015) (denying the government's search warrant application as overbroad and

15  noting that "[b]readth deals with the requirement that the scope of the warrant be limited by the

16  probable cause on which the warrant is based."). There is no allegation (let alone evidence) that

17  Ms. Thao did anything unlawful prior to October 2022, yet the government seized and searched

18  data going back to January 1, 2020, in connection with the February 2024 iCloud warrant (Fine

19  Decl., Ex. 1) and January 1, 2019, in connection with the May 2024 email warrant (Fine Decl.,

20  Ex. 5).

21      The government's opposition attempts to justify this overbreadth by claiming that,

22  because Ms. Thao sat on the Oakland City Council (which approved a CWS project at the

23  former Army base in Oakland), probable cause existed to search Ms. Thao's iCloud and email

24  accounts from that timeframe. <u>See</u> ECF No.151 at 37 (citing Fine Decl., Ex. 1 [Feb. 2024

25  Haunold Aff.] ¶¶ 86-88 & Fine Decl., Ex. 4 [May 2024 Haunold Aff.] ¶¶ 125-27). Undermining

26  its own point, however, the evidence cited by the government's opposition from Agent

27  Haunold's February and May 2024 affidavits <u>does not involve Ms. Thao at all</u>—in fact, it

28

DEFENDANT SHENG THAO'S REPLY IN SUPPORT OF
MOTION TO SUPPRESS AND <u>FRANKS</u> MOTION
CASE NO. 4:25-CR-3-YGR

1    involves a <u>different City Council member altogether</u>.[9] <u>See</u> <u>id.</u> To be sure, Ms. Thao is not

2    accused of any wrongdoing relative to that timeframe, and her seat on the Oakland City Council

3    was <u>not</u> a proffered basis in Agent Haunold's February and May 2024 affidavits (Fine Decl.,

4    Exs. 1, 4, or 5). And it certainly does not justify a search of her personal emails and

5    communications approximately three-to-four years prior to any facts in the affidavits. The

6    January 1, 2020 (iCloud) and January 1, 2019 (email) start dates are wholly untethered to the

7    probable-cause facts relied upon by the government, which its own cited opposition evidence

8    makes clear. This evidence should be suppressed as overbroad.

9                                        **III.    <u>CONCLUSION</u>**

10             For the foregoing reasons, the Court should grant Ms. Thao's request for a <u>Franks</u>

11    hearing and suppress all evidence seized pursuant to the June 20, 2024, searches of her

12    residence, vehicle, and person.

13             The Court should also suppress all evidence obtained from the February and May 2024

14    search warrants dated before October 2022.

15    Dated: January 26, 2026              Respectfully submitted,

16                                         DLA PIPER LLP (US)

17                                   By: <u>/s/ *Darryl Louis Tarver*</u>
                                         JEFFREY TSAI
18                                       DARRYL LOUIS TARVER (*Admitted pro hac vice*)
                                         *Attorneys for Defendant Sheng Thao*
19

20

21

22

23

24

25

26             [9] Pursuant to the Protective Order in this case (ECF No. 39), this reply brief does not
     identify the other City Council member identified in the evidence cited by the government. <u>See</u>
27    Fine Decl., Ex. 1 [Feb. 2024 Haunold Aff.] ¶¶ 86-88 & Fine Decl., Ex. 4 [May 2024 Haunold
     Aff.] ¶¶ 125-27).
28

                                                  14